```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x

In re:                              :

JOHN VISNICKY                       :    BK No. 08-11110
            Debtor                            Chapter 7

- - - - - - - - - - - - - - - - - -x
```

**OPINION AND ORDER DISAPPROVING REAFFIRMATION AGREEMENT
AND CONFIRMING TERMINATION OF THE AUTOMATIC STAY**

APPEARANCES:

    Peter G. Berman, Esq.
    Attorney for Debtor
    RASKIN & BERMAN
    116 East Manning Street
    Providence, Rhode Island 02906

    Lynda L. Laing, Esq.
    Attorney for Ford Motor Credit Company, LLC
    STRAUSS FACTOR LAING & LYONS
    222 Richmond Street, Suite 208
    Providence, Rhode Island 02903

**BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge**

BK No. 08-11110

## I. Facts and Procedural Background

These two related matters before the Court are: (1) Ford Motor Credit Company's request for confirmation that the automatic stay is terminated; and (2) the Debtor's request for Court approval of his Reaffirmation Agreement (the Agreement) with Ford regarding his 2006 Ford E250 motor vehicle.

This Chapter 7 case was filed in April 2008, and pursuant to 11 U.S.C. § 524(c), the Debtor stated his intention to reaffirm an installment loan agreement with Ford. Forty-five days[1] after the § 341 Meeting of Creditors, with no further action by the Debtor, Ford filed a motion requesting confirmation that the automatic stay was terminated, due to the Debtor's failure to timely file a reaffirmation agreement. See 11 U.S.C. § 521(a)(6). On July 3, 2008, Ford filed its own reaffirmation agreement with the Debtor.

A comparison of the Debtor's monthly income against his expenses discloses a $3,000 shortfall, which creates a presumption of undue hardship.[2] In compliance with 11 U.S.C. § 524(m)(1), the

---

[1] The creditor actually filed its motion on the 44th day after the 341 meeting was held, but this one day discrepancy is irrelevant, since the Debtor never did file a timely reaffirmation agreement.

[2] Despite the clear discrepancy in the income and expenses listed, counsel for the debtor selected the "no presumption of undue hardship" box at the top of the agreement, and also certified in Part C that "this agreement does not impose an undue hardship on the debtor or any dependent of the debtor." Without belaboring the point, counsel is cautioned to exercise better care when certifying

1

BK No. 08-11110

Court scheduled both the reaffirmation and stay issues for hearing, at which counsel announced that Ford would withdraw its motion requesting confirmation of termination of the automatic stay, if the agreement were to be approved by the Court.

On the issue of undue hardship, both the Debtor and his counsel maintain that the presumption has been rebutted because the Debtor's mother would be making the monthly payments,[3] but no evidence was offered to that effect. Advocating in favor of approval of the Agreement, Debtor's counsel volunteered that even where there has *not* been a payment default, if the Court fails to approve the reaffirmation agreement, *he thinks* it is Ford's practice to repossess vehicles. This same unsupported representation has been made repeatedly to this Court by counsel for Ford, at other reaffirmation hearings.

**II.  Discussion**

  A.  The Reaffirmation Agreement

11 U.S.C. § 524(m)(1) provides, *inter alia*, that "it shall be presumed that such agreement is an undue hardship on the debtor if

---

reaffirmation agreements, or be subject to § 526(c) penalties. *See In re Mendoza*, 347 B.R. 34,38 (Bankr. W.D. Tx. 2006) ("[E]ven negligently certifying a debtor's ability to make reaffirmation payments could subject the attorney to the range of penalties spelled out in section 526(c).")

[3] In his statement in support of the agreement, the Debtor indicates "payments will be made by Joanne Cardoza, Mr. Visnicky's mother."

2

BK No. 08-11110

the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of such agreement required under subsection (k)(6)(A) is less than the scheduled payments on the reaffirmed debt." The statute also provides that "[t]his presumption shall be reviewed by the court. The presumption may be rebutted in writing by the debtor if the statement includes an explanation that identifies additional sources of funds to make the payments as agreed upon under the terms of such agreement. If the presumption is not rebutted *to the satisfaction of the court*, the court may disapprove such agreement." (Emphasis added.)

Thus, court approval is required in these instances, whether or not the debtor is represented by counsel, and whether or not the attorney signed off on the agreement, *unless* the creditor is a credit union.[4] *In re Schmidt,* 397 B.R. 481 (Bankr. W.D. Mo. 2008); *In re Laynas*, 345 B.R. 505 (Bankr. E.D. Pa. 2006) (under the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA), when the presumption of undue hardship exists, judicial review of a reaffirmation agreement is mandated).

To rebut a presumption of undue hardship, the debtor must identify and explain the sources of the additional funds. "The

---

[4] The Credit Union exception is irrelevant here, but is yet another example of special interest lobbying which is the signature aspect of BAPCPA.

3

BK No. 08-11110

income of another party may, in appropriate circumstances, constitute a satisfactory 'additional source of funds' but only if the court is satisfied that the other person is both motivated to provide the funds and financially capable of doing so." *In re Callejas*, 2008 WL 4587901 (Bankr. E.D. Va.). A problem in this case, as in *Callejas*, is that the court has no reliable information concerning Mrs. Cardoza's financial capability nor her motivation, other than a hearsay, maternal desire to help her son. This case is similar to *In re Chim*, 381 B.R. 191, 195 (Bankr. D. Md. 2008), where the court, in ruling that the presumption was not rebutted by the debtor's reliance on her younger brother to provide financial assistance, said "no evidence was presented of the younger brother's financial condition, nor was he in court to testify on the scope of his commitment to provide such aid."

Obstacles abound in the case at bar, i.e., there is a shortfall in the Debtor's monthly budget of approximately $3,000, the vehicle is undersecured by $5,000 to $6,000, according to the parties' own figures,[5] and there were 55 payments remaining.

As noted by the court in *In re Laynas*, 345 B.R. at 514:

The BAPCPA 'overhaul of the law applicable to reaffirmation agreements, H.R. Rep. No. 109-31, 109th Cong., 1st Sess. At 57 (April 8, 2005), U.S. Code Cong. & Admin.News 2005, pp. 88, 127, was set forth in section

---

[5] The outstanding indebtedness under the agreement is $19,337, and the vehicle is valued at between $12,000 and $13,000.

4

BK No. 08-11110

203 of the 2005 reform act titled 'Discouraging Abuse of Reaffirmation Agreement Practices' 119 Stat. at 43. The words of the title express Congress' obvious intent to provide an extra measure of consumer protection over and above existing law." Id. at 514 (other citations omitted)... But Congress also provided for an additional layer of debtor protection by mandating judicial review of the reaffirmation agreements '[w]here the amount of the scheduled payments due on the reaffirmation debt (as disclosed in the debtor's statement) exceeds the debtor's available income.' Id. at 58, U.S.Code Cong. & Admin.News 2005, pp. 88, 127-28. ... Judicial review of reaffirmation agreements has been described as an "excellent preventive measure against unwise reaffirmation of debts that may impair debtors' fresh start." *In re Vargas,* 257 B.R. at 166.

Based upon the entire record, I find that the Debtor has failed to rebut the presumption of undue hardship, and will not approve this Reaffirmation Agreement. *See* 11 U.S.C. § 524(m)(1). At the hearing, based on his concerns discussed at 2, *supra,* Debtor's counsel requested a stay pending appeal, if the agreement were not approved. Because of the high volume of litigation concerning these same issues, and the need for controlling appellate guidance on the subject, that request is **GRANTED**.[6]

B. <u>Motion Confirming Termination of Automatic Stay</u>

With the agreement disapproved, the Court must next rule on Ford's motion confirming termination of the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and 521(a)(6). Ford argues that the stay

---

[6] While the standard *likelihood of success test* is not applicable here – *see In re Miraj & Sons, Inc.*, 201 B.R. 23, 26 (Bankr. D. Mass. 1996), the Debtor has satisfied each of the other prongs of the stay pending appeal analysis.

5

BK No. 08-11110

is no longer in effect because "the debtors [sic] failed to file to reaffirm the collateral." As we have discussed, the Debtor did file the reaffirmation agreement on July 3, 2008, but not until 52 days after the § 341 meeting was held.

Section 362(h) provides that the automatic stay terminates with respect to personal property securing a claim if an individual Chapter 7 debtor fails to timely file the statement of intention, and then fails to timely perform as declared in the statement. Section 521(a)(6) on the other hand, mandates that an individual Chapter 7 debtor not retain possession of personal property unless he or she reaffirms the debt or redeems such property within 45 days after the meeting of creditors. Section 521(a)(6) further states that:

> If the debtor fails to so act within the 45-day period referred to in paragraph (6), the stay under section 362(a) is terminated with respect to the personal property of the estate or of the debtor which is affected, such property shall no longer be property of the estate, and *the creditor may take whatever action as to such property as is permitted by applicable nonbankruptcy law.*[7] (Emphasis added.)

Here, the Debtor timely filed his statement of intention to reaffirm on the date of the bankruptcy filing, but was 7 days late in submitting the reaffirmation agreement. Since the 45 day deadline

---

[7] Subsection (a)(6) was added in 2005 by BAPCPA, and R.I. Gen. Laws 6-51-1 et seq. was adopted in 2007, thus distinguishing the holding in *In re Burr*, 160 F.3d 843 (1st Cir. 1998).

6

BK No. 08-11110

had expired, the automatic stay terminated by operation of law on June 26, 2008, and thereafter the creditor was free to "take whatever action as to such property as is permitted by applicable nonbankruptcy law."

This does not, however, end the discussion regarding the Debtor's right to retain possession of his car. As we stated at the outset, as of the date of the hearing, there was no payment default on the Ford loan. In addition, it does not appear that any other act of default has occurred which would give rise to any action *under state law* for repossession of the vehicle. In its motion to confirm termination of the automatic stay, Ford does not allege what grounds would allow it to repossess the vehicle, where a payment default has not occurred. "Unless there is a default, the creditor is not entitled to repossession of the collateral." *In re Rowe*, 342 B.R. 341, 350 (Bankr. D. Kan. 2006); *In re Riggs*, 2006 WL 2990218 (Bankr. W.D. Mo. 2006).

In Rhode Island, as in Kansas, Missouri, Idaho, and a number of other states, "there are two primary codes which apply to repossession of collateral, Article 9 of the Uniform Commercial Code (UCC)[8] and the Uniform Consumer Credit Code (UCCC)".[9] *Id.* In July 2007, Rhode Island adopted the model UCCC in R.I. Gen. L. Title 6,

---

[8] R.I. Gen. L. 6A-9-601, et seq.

[9] R.I. Gen. L. 6-51-1, et seq.

BK No. 08-11110

Chapter 6-51-1 *et seq.* entitled "The Rhode Island Automobile Repossession Act" (the Act). This Act authorizes the enforcement of the default provisions of a consumer automobile lease or loan agreement in only two instances:

> "(1) The consumer does not make one or more payments required by the lease or loan agreement; or
>
> (2) The lessor or secured party establishes that the prospect of payment, performance or realization of the lessor's or secured party's interest in the automobile is significantly impaired." R.I. Gen. L. § 6-51-3.

The Rhode Island UCC provides: "[a] transaction subject to this chapter [the UCC] is subject to (1) any applicable rule of law which establishes a different rule for consumers, (2) any other statute or regulation that regulates the rates, charges, agreements, and practices for loans, credit sales, or other extensions of credit, and (3) any consumer-protection statute or regulation." R.I. Gen. L. § 6A-9-201(b), i.e., "where the provisions of the UCC and the UCCC conflict, the provisions of the UCCC shall control." *Johnson Country Auto Credit, Inc. v. Green,* 83 P.3d 152 (Kan. 2004) citing *Kelley v. Commercial National Bank*, 678 P.2d 620 (Kan. 1984); *see also*, Law of Sec. Trans. Under the UCC ¶12.05[1][A](2007)("the most important provisions in Article 9 are found in Rev. UCC 9-201, which defers to any consumer protection legislation of the enacting state in conflict with the UCC.").

8

BK No. 08-11110

A current trend in the consumer credit area is that "[b]oth legislatures and courts are chipping away at the open-ended concept of default in consumer credit transactions," by defining default objectively under the UCCC Law of Sec. Trans. Under the UCC ¶ 12.05[1][A](2007), also citing *In re Johnson Country Audit Credit, Inc. v. Green*, 83 P.3d 152 (Kan. 2004). "*This takes from the creditor the power to define 'default' as it sees fit in the security agreement; it also precludes insecurity clauses as triggers.*" *Id.* (emphasis added); *see also Prairie State Bank v. Hoefgen*, 777 P.2d 811 (Kan. 1989) (creditor no longer has unilateral power to define "default" as broadly as it desires in the security agreement).

Furthermore, under the UCCC, the burden is on the creditor to establish "the prospect of significant impairment" under the second prong of default. R.I. Gen. L. § 6-51-3(2). Since there is not a payment default in the instant case, the only remaining ground available to Ford under R.I. Gen. L. § 6-51-3 is the "significant impairment" element. Given the newness of this state statute, there are no reported Rhode Island cases interpreting the provision. Nevertheless, we do find instructive the opening legislative comment regarding this legislation:

> "(a) Rhode Island consumers who have purchased, through an extension of credit, or leased an automobile may fall behind on payments during difficult economic or emotional times and should be allowed to cure a default on the loan

9

BK No. 08-11110

or lease within the time provided under this chapter." R.I. Gen. L. §6-51-1.

This language shows a clear legislative intent to help Rhode Island consumers retain their vehicles, particularly during difficult economic times.[10]

Several courts have considered this very issue under similar state statutes, and I find the analysis in *In re Riggs*, 2006 WL 2990218 (Bankr. W.D. Mo. 2006), to be most on point and persuasive, in particular where the court held:

> "[I]f a debtor is current on its payments, even if the contract contains an *ipso facto* clause, such clause is enforceable only if the lender can establish that its prospect of payment, performance, or ability to realize upon its collateral is 'significantly impaired'. If the debtor is current on payments, and the only existing default is that the debtor filed for bankruptcy protection, it may well be difficult for a lender to establish that its prospects of payment and performance are significantly impaired merely due to the filing of a Chapter 7 bankruptcy case. This is so because most debtors are more likely to be able to make the payments post-bankruptcy than they were pre-bankruptcy, since the bankruptcy case usually results in the discharge of debts which the debtor would otherwise be obligated to service." Id.

---

[10] Unfortunately, for both creditors and consumers, the present economic times would appear to easily qualify as "difficult economic times" under any standard, including R.I. Gen. L. § 6-51-1. To set the context for future readers, today's headlines are replete with the terms: *recession*, depression, stimulus packages, bailout, etc. The word *million* has become an anachronism, as government currently refers to stimulus dollars in terms of billions or trillions.

10

BK No. 08-11110

Other bankruptcy courts have issued similar rulings. *In re Rowe,* 342 B.R. at 350-351 (Creditor concedes that Congress's stating that *ipso facto* clauses are not rendered unenforceable by bankruptcy law probably would not be sufficient to make the filing of bankruptcy a 'significant impairment' for purposes of the definition of default in the UCCC.); *In re Schmidt*, 2008 WL 4969167 (Bankr. W.D. Mo. 2008); *Dumont v. Ford Motor Credit Company*, 383 B.R. 481 (9th Cir. BAP 2008) and *In re Steinhaus*, 349 B.R. 694 (Bankr. D. Idaho 2006).

So, based on the failure of the Debtor to file the reaffirmation agreement within the 45 day period required by § 521(a)(6), Ford's motion to confirm the termination of the automatic stay is **GRANTED.** The balance of the relief sought by Ford, i.e., requesting authority to repossess and dispose of the vehicle, is **DENIED**, and Ford is free to seek appropriate relief in the Rhode Island state courts. *See* R.I. Gen. Laws § 6-51-3.

Dated at Providence, Rhode Island, this 19th day of February, 2009.

                                        Arthur N. Votolato
                                        U.S. Bankruptcy Court

Entered on docket: 2/19/09